[No. B015480. Second Dist., Div. Four. Jan. 9, 1986.]

MARTHA MONGE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CROWN GIBRALTER GRAPHIC CENTER, INC., et al.,
Real Parties in Interest.

**COUNSEL**

Richard B. Hauser and Patrick H. Aspell for Petitioners.

No appearance for Respondent.

John Nouskajian, Jr., Patricia M. Coleman and Terrence L. Cranert for Real Parties in Interest.

**OPINION**

**WOODS, P. J.**—By petition for mandate, plaintiffs seek review of an order striking from their complaint all allegations concerning punitive damages. Leave to amend was not granted.

The questions presented are (1) whether punitive damages may be recovered in a civil action for conduct constituting employment discrimination in the form of sexual harassment, intentional infliction of emotional distress, and constructive termination of employment, and (2) whether this complaint states sufficient facts for punitive damage liability.

The first amended complaint alleges that while plaintiff Allison Patton (Patton) was operating a computer terminal in the course of her employment with defendant Crown Gibralter Graphic Center, Inc. (Crown) the message

"How about a little head?" was displayed on the screen. Patton believed that the president, vice president and another corporate officer of defendant corporation had conspired to create the message, and that it was directed to her as a sexual proposition. Patton promptly complained to her immediate supervisor, plaintiff Martha Monge. Monge transmitted the complaint of sexual harassment to defendant officers who were her supervisors. Defendant officers allegedly ratified the act by refusing to investigate or correct it. They also engaged upon a systematic course of retaliation by "creat[ing] an intimidating, hostile and offensive working environment for each of the Plaintiffs" that "changed Plaintiffs' working environment, hours, lunch and other privileges, and demoted the Plaintiffs to lesser positions, all in retaliation against the Plaintiffs for their complaints regarding sexual harassment."

As a result of defendants' conduct, Monge, who was pregnant, was hospitalized for tension and emotional distress. Patton also suffered emotional distress and, eventually, both Monge and Patton were "forced to resign" because of the retaliatory actions by defendants.

Paragraphs 13, 18 and 24 of the complaint characterize defendant's sexual harassment and retaliatory conduct as "malicious and oppressive" and as "done with the intent to harm the Plaintiffs, and with wilful or reckless disregard for the consequences to the Plaintiffs." In the second cause of action, plaintiffs allege that defendants' described actions "had as their sole purpose the intentional infliction of emotional distress. . . ."

On these alleged facts, plaintiffs seek to recover compensatory, general and punitive damages under their three respective causes for (1) sexual discrimination and harassment under section 12940 of the Government Code (Fair Employment and Housing Act); (2) intentional infliction of emotional distress; and (3) wrongful termination of employment and breach of implied covenant of good faith and fair dealing between employer and employee.

Exhaustion of administrative remedies with the Department of Fair Employment and Housing is alleged. The department issued "right to sue" letters prerequisite to a civil action. (Gov. Code, § 12965.)

Defendants demurred to the entire complaint and moved to strike all punitive damage allegations and the related prayer for punitives from the complaint.

The trial court overruled the demurrer but granted the motion to strike without a statement of grounds. Because no leave to amend was granted, we assume that respondent ruled either that, as a matter of law, punitive

damages may not be recovered on any such causes, or that the particular allegations in the complaint were deficient and could not be cured by amendment.

## DISCUSSION

We conclude that respondent clearly abused its discretion and that sufficient facts are pleaded to allow recovery of punitive damages as to each cause of action.

### I

Section 3294 of the Civil Code allows for recovery of punitive damages in all civil actions "not arising from contract."[1] ■ There can be no dispute that all three of plaintiffs' causes are in tort and are not based upon contract within the meaning of section 3294 of the Civil Code. (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 215 [185 Cal.Rptr. 270, 649 P.2d 912] [racial discrimination and harassment in employment conditions is noncontractual action allowing punitive damage award]; *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 177-178 [164 Cal.Rptr. 839, 610 P.2d 1330]; *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 304 [188 Cal.Rptr. 159] [wrongful discharge from employment and breach of implied-in-law covenant of good faith and fair dealing]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497, fn. 1 [86 Cal.Rptr. 88, 468 P.2d 216] [intentional infliction of emotional distress upon employee by racial epithets uttered by superiors on the job].)

### II

■ Since respondent overruled the demurrer as to all three causes of action, the punitive damage allegations are not precluded by absence of a foundational cause of action.

---

[1]That statute provides: "(a) In an action for the *breach of an obligation not arising from contract*, where the defendant has been guilty of *oppression*, fraud, or *malice*, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

"(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, *unless* the employer had *advance knowledge* of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others *or authorized or ratified the wrongful conduct* for which the damages are awarded *or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.*" (Italics added.)

Plaintiffs first cause of action is for sexual job discrimination and harassment under section 12940 of the Government Code.[2] There is no dispute that the first cause of action sufficiently alleges the defendant corporation's violation of subdivisions (a), (f), (i) and (j) and the corporate officers' individual violations of subdivisions (g) and (i) of Government Code section 12940. (See also *DFEH* v. *Fresno Hilton Hotel* (1984) FEHC Precedential Dec. No. 84-03 (1984-1985 Cont.Ed.Bar 2) [sexual harassment by superior ratified by employer's failure to correct]; *DFEH* v. *Bee Hive Answering Service* (1984) FEHC Dec. No. 84-16 (1984-1985 Cont.Ed.Bar 8) [sexual harassment at job known to employer is discriminatory practice under FE & H Act]; *DFEH* v. *Hart and Starkey, Inc.* (1984) FEHC Dec. No. 84-23 (1984-1985 Cont.Ed.Bar 9) [intolerable harassment that employer reasonably should anticipate would cause employee's resignation].)

■ The next question is whether a cause of action for sexual employment discrimination may, under law, sustain recovery of punitive damages. The clear answer is that it may.

■ In *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d at pages 220-221, the Supreme Court held that civil actions based upon racial employment discrimination violations of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) may include recovery of punitive damages under the general provisions of section 3294 of the Civil Code. This is so because section 3294 applies generally to all noncontractual causes of action and the act does not suggest any legislative intent to preclude such damages to civil litigants.

■ It follows that where an action is pleaded under the Fair Employment and Housing Act for sexual employment discrimination, the same opportunity to plead and recover punitive damages exists.

---

[2]Government Code section 12940, in pertinent part, makes it an "unlawful employment practice" for any employer on the basis of sex or other status of an employee to "bar or to discharge" an employee from employment "or to discriminate against such person in compensation or in terms, conditions or privileges of employment." (Subd. (a).) It also makes it unlawful for employers to "discharge, expel, or otherwise discriminate against" an employee because the employee has opposed any practices forbidden by the statute. (Subd. (f).) It is unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden [under the Act] or to attempt to do so." (Subd. (g).) It is unlawful for an employer or any other person to harass an employee on the basis of sexual or other status protected by the act. Harassment by a corporate employer's agents or supervisors is attributable to the employer and harassment by other employees may be so attributable if the employer knows of the conduct and fails to "take immediate and appropriate corrective action" or "to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (Subds. (i) and (j).) All violations are subject to civil action with formal consent by the Department of Fair Employment and Housing.

Similarly, the United States Court of Appeals held in *Mitchell* v. *Keith* (9th Cir. 1985) 752 F.2d 385, that a corporate employee, harassed and terminated due to racial discrimination by a managerial employee, may recover punitive damages against the corporate employer under the bases provided in section 3294, subdivision (b), of the California Civil Code. That federal action was brought under 42 United States Code section 1981 which provides for punitive damages for racial employment discrimination. However, the court looked to applicable state law to determine an employer's liability for punitive damages under the doctrine of respondeat superior because the provisions of the federal statute were deficient in this regard.

## III

The sole remaining possible justification for striking the punitive damages allegations is the insufficiency of the charging allegations to plead facts that could establish the element of "oppression" or "malice." As will be demonstrated, the allegations are more than sufficient in this regard.

In determining whether a complaint states facts sufficient to sustain punitive damages, the challenged allegations must be read in context with the other facts alleged in the complaint. Further, even though certain language pleads ultimate facts or conclusions of law, such language when read in context with the facts alleged as to defendants' conduct may adequately plead the evil motive requisite to recovery of punitive damages. (*Perkins* v. *Superior Court* (1981) 117 Cal.App.3d 1, 6-7 [172 Cal.Rptr. 427].)

*Perkins* provides the highly pertinent example of this standard in the context of a motion to strike punitive damage allegations. There the complaint alleged that defendants "wrongfully and intentionally" invaded plaintiff's privacy and terminated his telephone service "in retaliation" for prior complaints lodged by plaintiff. The complaint also generally alleged that defendants were guilty of "oppression, fraud and malice." *Perkins* read the complaint as a whole and held that the alleged conclusions of fact or law considered in the context of alleged wrongful conduct "in retaliation" pleaded an evil injurious motive sufficient to establish malice and sustain a plea for punitive damages.

In *G.D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 27-32 [122 Cal.Rptr. 218], it was pointed out that there exists an uncertainty in the case law as to just what terms adequately describe the necessary elements of "oppression, fraud or malice" under Civil Code section 3294. *Searle* suggests that different types of injurious conduct allow different formulations in pleading oppression or malice, but that the critical element is an "evil motive" of the defendant. (*Id.*, at pp. 29-31.)

The meanings of "oppression" and "malice" with regard to Civil Code section 3294 are explained in *Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232, 245-246 [102 Cal.Rptr. 547].  ▪ "Malice" means a wrongful intent to vex or annoy. "Oppression" means "subjecting a person to cruel and unjust hardship in conscious disregard of his rights." Malice and oppression may be inferred from the circumstances of a defendant's conduct.

▪ With the *Perkins, Searle* and *Richardson* guidelines in mind, we turn to an analysis of the sufficiency of the punitive damage allegations in the underlying complaint.

Under any formulation of the pleading standard, the above quoted allegations of the underlying complaint, read as a whole, sufficiently allege a deliberate intent on the part of defendants to sexually harass and then to retaliate against plaintiffs, causing them to suffer significant mental anguish on the job without regard for their right to be free from such oppressive and hostile employment conditions. This concisely pleads defendants' actions as having an unequivocally evil and mischievous motive.

Other than a more detailed description of the manner by which defendants transformed plaintiffs' working environment into an oppressive and hostile situation or of the precise job demotions and privilege changes effected by defendants in their retaliatory effort, it is difficult to conceive how the complaint could more graphically plead the requisite element of an evil and mischievous motive on the defendants' part both to vex and annoy plaintiffs and to subject them to cruel and unjust hardship in conscious disregard of their rights. (*Richardson* v. *Employers Liab. Assur. Corp., supra,* 25 Cal.App.3d at pp. 245-246.)

This case is manifestly distinguishable from *Brousseau* v. *Jarrett* (1977) 73 Cal.App.3d 864 [141 Cal.Rptr. 200], cited by defendants. The facts alleged as to negligent medical services in *Brousseau* did not inherently manifest an evil motive to injure the patient. The mere conclusionary characterization of the negligence as "intentional and willful" fell short of a showing of the requisite evil motive to injure. In contrast, the underlying complaint employs far more descriptive fact allegations showing that the only ostensible motive for defendants' injurious conduct was to vex, harass and annoy plaintiffs by subjecting them to an oppressive job environment. (See *Richardson* v. *Employers Liab. Assur. Corp., supra,* 25 Cal.App.3d at pp. 245-246.)

▪ In their motion to strike, defendants asserted that insufficient factual allegations are pleaded in paragraph 4 of the first amended complaint to

place them within section 3294, subdivisions (a) and (b) of the Civil Code because the paragraph alleges upon information and belief and does not specify in what manner or capacity the individual defendants acted to expose themselves to individual liability for punitive damages.

This contention is misdirected and spurious. The sole allegation on information and belief in paragraph 4 is that one Michael Kaplan was an accountant employed by the corporate defendant. The remainder of the paragraph directly alleges facts upon personal knowledge as to defendants' respective capacities.

■ Also devoid of merit is defendants' assertion that there was no abuse of discretion in striking the punitive damage allegations because the trial court has discretion to award or deny such damages. The cases relied upon for this proposition refer to the discretion of the trier of fact to assess or withhold an award of punitive damages after hearing the evidence, not to a plaintiff's entitlement to plead such damages in an appropriate cause of action. (See *Billie* v. *Manning* (1949) 94 Cal.App.2d 142, 145 [210 P.2d 254]; *Luke* v. *Mercantile Acceptance Corp.* (1952) 111 Cal.App.2d 431, 437-438 [244 P.2d 764]; *Browand* v. *Scott Lumber Co.* (1954) 125 Cal.App.2d 68, 73-74 [269 P.2d 891]; *Sullivan* v. *Matt* (1955) 130 Cal.App.2d 134, 143-144 [278 P.2d 499].)

In sum, there is no basis in law for respondent's order granting the motion to strike. Plaintiffs' three causes of action are noncontractual and may include allegations seeking punitive damages. The charging allegations of the complaint, read as a whole, clearly contain sufficient allegations of fact which if proven would sustain an award of punitive damages upon defendants' malice or oppression.

Let a peremptory writ of mandate issue directing respondent to vacate its order of July 12, 1985, in Los Angeles Superior Court case No. NEC 41922, entitled Monge and Patton v. Crown Gibralter Graphic Center, Inc., et al., that granted defendants' motion to strike, and to make a new and different order denying that motion in its entirety forthwith.

McClosky, J., and Arguelles, J., concurred.